IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

THAI ZE XIONG,

      Plaintiff,                         No. CIV S-07-2289 EFB

      vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.                    ORDER
_____/

       Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively. For the reasons discussed below, the court grants plaintiff's motion for summary judgment and remand, and denies the Commissioner's cross-motion for summary judgment.

I. BACKGROUND

       Plaintiff, born October 2, 1960, applied for disability benefits and supplemental security income on March 3, 2005. Administrative Record ("AR") 169-171. Plaintiff stated that he became unable to work on February 20, 2004, as a result of diabetes, high blood pressure, high cholesterol, and pain in his right leg, right arm, shoulder, and left lower abdomen, resulting in

1

constant pain and an inability to engage in extended standing and walking. AR 69-70. Plaintiff previously worked for a mobile glass company (1998-1999), and then for a company that made and installed vehicle "starters" (2000-2004). AR 70, 61, 42-28, 99. His most recent job required plaintiff to open, lift, carry, stack and pack boxes. He was required to walk, stand, climb, stoop, reach, handle and manipulate small objects eight hours a day, and his job included the use of machines, tools or equipment, and the performance of writing or completing reports or similar tasks. He was required frequently to lift items weighing 25 pounds, and occasionally 50 pounds. AR 70-71. Plaintiff has no formal education. AR 73. He takes several medications for pain, stomach ulcer, sleeping and diabetes.[1] AR 72. He lives in an apartment with his wife and six children, born 1988 to 1996. AR 170.

At the February 16, 2007 hearing before administrative law judge ("ALJ") Theodore Slocum, plaintiff testified, assisted by both an interpreter and a personal representative, that he was born in Laos in 1960 and came to the United States in 1980. AR 179. Plaintiff testified that he went to school for five years in Laos, and worked as a farmer. AR 180. He was a CIA soldier in Laos from 1972 to 1975. AR 184. He joined the military when he was 13 years old. AR. 185. Plaintiff testified that while he was a soldier he had to "shoot a big gun a lot," and as a result, now has right shoulder pain and hearing loss. AR 185, 189. Also while a soldier, plaintiff was shot in the right foot. That same foot was later bit by a dog and is now painful, with medications providing only temporary relief. AR 188.

Plaintiff testified that in the United States, he worked for one year packaging computers, but left "because I don't understand English, and I don't know the job well, so they don't want me." AR 181. Plaintiff worked from 2001 to 2004 for an auto parts company that built and installed alternators and starters. AR 181, 182. He was required to lift up to 50 pounds all day.

---

[1] These medications are listed as follows: Amaryl for diabetes, Amitriptyline for sleeping, Benazerpril HCl for stomach, Dislofenac for pain, Qpapexstr for pain, and Rainitidine for stomach ulcer. AR 72.

2

AR 185.  He was laid off when told that "the job's very slow, so I need to go home."  AR 181.  Previously, from 1983 to 1990, for "four years," plaintiff worked sorting newspapers.  AR 186.  He left because "[t]hey said it got slow, so they laid me off."  *Id.*  Plaintiff testified that he hasn't looked for work since leaving the auto parts job because he doesn't feel well.  AR 182.  He testified that he has not learned English "[b]ecause I working, and I don't have time to go study."  *Id.*

Plaintiff testified that he watches what he eats, measures his blood sugar regularly, and goes to the doctor monthly.  AR 183-184.  He stated that he gets headaches, lasting three or four hours, that make him nauseous and "cannot see," his doctor gave him medication that helps temporarily but the pains come back.  AR 188-189, 196-197.  Plaintiff testified that he doesn't sleep well due to his headaches, and the pain in his leg and shoulder, as well as coughing and "throw up."  AR 192.  Plaintiff stated that he takes daily naps lasting 30 minutes, and that he walks a mile in the morning and a mile in the afternoon to reduce his blood pressure, as directed by his doctor, taking five-minute breaks in the middle of each walk to rest.  AR 194-195.  Plaintiff testified that he drives his car only to the school, about five minutes away; that his son drives him to medical appointments; and that his wife and children do all the shopping, largely because the smells make him nauseous.  AR 195.  Plaintiff testified that he has no friends other than his brother-in- law, with whom he visits a few minutes once or twice a week.  *Id.*

Plaintiff testified that he is home alone during the days and usually sits on the sofa and relaxes.  He does not watch television or listen to music.  He generally remembers to take his medications and test his diabetes but, if he forgets, his wife or children remind him.  AR 197-198, 189.  Plaintiff testified that he was scheduled for hernia surgery the following month.  AR 192, 198.

Plaintiff testified that he went to "Northgate Point" (a Sacramento County mental health treatment clinic) because "I was so lonely, that's why I made a check-up right then."  AR 191.
////

The ALJ stated, "[t]hat could be very important to this case," and left open the record to obtain plaintiff's information from Northgate Point. AR 191, 199. The ALJ also noted that "the idea that he can walk a mile is not harmful to him. . . . [T]hat's an indication that he may be trying to keep his health in good shape." AR 199.

The ALJ issued a decision on September 17, 2005, finding that plaintiff is not disabled.[2] AR 11-18. The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2009.

2. The claimant has not engaged in substantial gainful activity since February 20, 2004, the alleged onset date (20 C.F.R. 404.1571 et seq., 416.920(b) and 416.971 et seq.).

////

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § §1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater,* 81 F.3d 821, 828, n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Bowen*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

3. The claimant has the following severe impairments: Diabetes, hypertension, and shoulder, leg and abdominal strain (20 C.F.R. 404.1520(c) and 416.920 (c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the record, the undersigned finds that the claimant has the residual functional capacity to perform light work activity.

6. The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).

7. The claimant was born on October 2, 1960 and was 43 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 C.F.R. 404.1563 and 416.963).

8. The claimant is illiterate and is not able to communicate in English (20 C.F.R. 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 C.F.R. 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1560(c), 404.1566, 416.960(c), and 416.966). . . . Based on a residual functional capacity for the full range of light work, considering the claimant's age, education, and work experience, a finding of "not disabled" is directed by the Medical-Vocational Rule 202.16.

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 20, 2004 through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

On August 30, 2007, the Appeals Council denied plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. AR 3-5.

II. <u>ISSUES PRESENTED</u>

Plaintiff contends that the ALJ erred in assessing plaintiff's residual functional capacity and applying the Medical-Vocational Guidelines, by: (1) failing to develop the record regarding plaintiff's depression, (2) failing to credit plaintiff's allegations of pain and functional limitations, and (3) failing to secure the testimony of a vocational expert. These contentions are meritorious and require remand of this case for further development of the record and the testimony of a vocational expert.

5

## II. STANDARD OF REVIEW

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## IV. MEDICAL EVIDENCE

Plaintiff's treatment records, from Hmong New Life and Sacramento Family Medical Clinic, demonstrate regular care for his diabetes and hypertension, coupled with plaintiff's consistent subjective complaints of pain in his right leg and heel, and lower back (he also complained of pain in his upper back, neck, shoulder, and hands), treated with medication but without objective testing such as x-rays. AR 116-166. Plaintiff's treatment records also note that plaintiff appeared depressed, *see* AR 120, 126, 128, 166 (each describing plaintiff as a "depressed male"), and that he was prescribed antidepressant medications, *see* AR 72, 80, 86,

////

101 (Amitriptyline ("Elavil"),[3] prescribed to treat plaintiff's sleeping problems), and AR 93, 97 (Seroquel and Fluoxetine HCl ("Prozac"), the former for sleeping, the latter for depression).

On April 5, 2005, Liana Turkot, M.D., examined plaintiff, with the assistance of an interpreter, at the request of the Commissioner. AR 100-105. Despite making the following diagnoses – hypertension, diabetes, hypercholesterolemia, periodic abdominal discomfort, right shoulder arthralgia, pain in the right lower extremity, frequent headaches, and hearing loss – Dr. Turkot found no functional restrictions, opining that plaintiff can perform the full range of medium work. She opined that plaintiff's blood pressure was uncontrolled, "probably secondary to noncompliance," but that "[t]his is a treatable condition and it could be improved with adjustment of his medication." AR 105, 104.

Also in April 2005, non-examining State Agency consultant Sandra Clancey, M.D., completed a Physical Residual Functional Capacity Assessment, and concluded that plaintiff can perform the full range of medium work, without limitations. AR 106 -113. Dr. Clancey found significant Dr. Turkot's note that plaintiff's reduced right grip strength "was probably related to poor effort." AR 111, 103. The findings of Dr. Clancey were affirmed by non-examining State Agency consultant Dr. Jensen in October 2005. AR. 113.

V. DISCUSSION

The Medical-Vocational Guidelines in table form ("grids"), 20 C.F.R., Pt. 404, Subpt. P, App. 2, are an administrative tool the Commissioner may rely upon when considering claimants with substantially uniform levels of impairment. *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988). They reflect combinations of residual functional capacity, age, education, and work experience, and can be used to determine whether work other than a claimant's past relevant work is available. *See Desrosiers v. Sec'y of Health and Human Servs.*, 846 F.2d 573, 577-78 (9th Cir. 1988) (Pregerson, J., concurring).

---

[3] All prescriptive descriptions are taken from the Physicians' Desk Reference ("PDR"), 63rd ed. (2009).

The Guidelines "may be used, however, only when the grids accurately and completely describe the claimant's abilities and limitations. When a claimant's non-exertional limitations are sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitations,[4] the grids are inapplicable. In such instances, the [Commissioner] must take the testimony of a vocational expert, and identify specific jobs within the claimant's [specific] capabilities." *Burkhart v. Bowen*, 856 F.2d at 1340 (citations, internal quotations, and internal fn. omitted).

However, the ALJ is not automatically required to deviate from the grids whenever a claimant has alleged a nonexertional limitation. *Desrosiers*, 846 F.2d at 577 ("[T]he fact that a non-exertional limitation is alleged does not automatically preclude application of the grids."); 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)(2) (1996). Rather, the ALJ must weigh the evidence with respect to work experience, education, and psychological and physical impairments to determine whether a nonexertional limitation significantly limits plaintiff's ability to work in a given category. *Desrosiers*, 846 F.2d at 578. "A non-exertional impairment, if sufficiently severe, may limit the claimant's functional capacity in ways not contemplated by the guidelines," and would then render application of the grids inappropriate. *Desrosiers*, 846 F.2d at 577-78.

Proper application of the grids therefore rests on a supported finding that the claimant does not have a significant nonexertional limitation, a finding which is itself dependent on adequate information upon which to make such a determination.

---

[4] Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling. 20 C.F.R. § 416.969a (b) (1996); SSR 83-10. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n. 6 (9th Cir. 1989). Nonexertional activities include mental, sensory, postural, manipulative and environmental matters which do not directly affect the primary strength activities. 20 C.F.R. § 416.969a (c) (1996); SSR 83-10; *Cooper*, 880 F.2d at 1156 n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids." *Penny v. Sullivan*, 2 F.3d 953, 958 (9th Cir. 1993).

8

Plaintiff contends that the ALJ erred in failing to develop the record regarding his depression, a nonexertional impairment which, if significant, renders application of the grids inappropriate. *See, e.g.*, *Jones v. Bowen*, 660 F. Supp. 197, 200 (N.D. Cal. 1987). Plaintiff argues that the ALJ erred by failing to secure his medical records from Northgate Point, and by failing to order a psychiatric consultative examination.

An ALJ's duty to develop the record is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). "The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations and internal quotations omitted). This duty is heightened where the claimant may have a mental illness and thus be unable to protect his own interests. *Id.; see also Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir.1996) (ALJ has duty to develop the record even when claimant is represented); *and Smolen*, 80 F.3d at 1288 (where there is some objective evidence suggesting a condition which could have a material impact on the disability decision, the ALJ must further investigate).

Here, the ALJ's decision did not address, or even reference, plaintiff's alleged depression, despite evidence in the record that plaintiff appeared depressed, was prescribed antidepressants, and had sought mental health treatment. While the ALJ left the record open to obtain plaintiff's records from Northgate Point, the failure of plaintiff's representative to provide these records (not identified as mental health records in the decision) was relied upon only to discredit plaintiff. AR 16-17. However, the failure of plaintiff's former representative to provide the Northgate Point treatment records did not relieve the ALJ of his duty independently to develop the record. Had the ALJ expressly considered the matter, rendering an opinion on the available evidence, then leaving open the record may have satisfied this duty even though the additional evidence was not provided. *Cf., e.g., Tidwell v. Apfel*, 161 F. 3d 599, 602 (9th Cir. 1998). However, the ALJ was not free simply to ignore the pertinent references in the record,

9

which included the following. Plaintiff stated in his initial application for benefits that his medical records reflect treatment for "physical/medical, mental health and emotional issue." AR 72. Plaintiff stated in his appeal of the initial denial of his application that "I have so depress, anxiety, nervous and suicidal thought and I take medications everyday and night," AR 90; "I had no motivation and no energy to care for my personal needs. I just stay home no interest about anything," AR 94; and noted that he went to "Turning Point" [sic] to treat his "mental health, emotional issue, depression, sleeping problem, nightmare, suicidal thought," AR 91, *see also* AR 98 (referencing treatment at Northgate Point). Plaintiff repeated these statements in his request for an administrative hearing. AR 27 ("I can't work due to my medical and mental health, emotional issue"). Finally, at the administrative hearing, plaintiff responded to the ALJ's questioning that he went to Northgate Point because "I was so lonely," to which the ALJ then conceded, "[t]hat could be very important to this case." AR 191. This evidence required the ALJ's express consideration.

Accordingly, the court finds that the ALJ failed to develop the record regarding plaintiff's alleged mental impairment, and will remand this case for that purpose. In addition to obtaining plaintiff's records from Northgate Point, the ALJ shall order a psychiatric consultative examination of plaintiff.[5] This evidence, as well as the evidence discussed below concerning plaintiff's additional nonexertional limitations, must be submitted to a vocational expert for consideration of all of plaintiff's limitations in order to determine whether plaintiff can perform work that exists in significant numbers in the national economy. *See*, *e.g., Lewis v. Apfel,* 236

---

[5] "Critical to the fair and effective operation of the system for distributing social security benefits based on disability is the gathering and presentation of medical evidence. The burden of demonstrating a disability lies with the claimant. But it is equally clear that the ALJ has a duty to assist in developing the record. One of the means available to an ALJ to supplement an inadequate medical record is to order a consultative examination . . ." *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001) (citations and internal quotations omitted), but also citing *Sims v. Apfel*, 530 U.S. 103, 110-11 [] (2000) ("Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits. . . .").

10

1  F.3d 503, 517 (9th Cir. 2001) (hypothetical questions asked of the vocational expert must set out
2  *all* of the claimant's impairments); 20 C.F.R. §§ 404.1566 (e), 416.966(e).

3  Submitting this matter to a vocational expert is also required based upon plaintiff's other
4  nonexertional impairments, particularly his various allegations of pain, but also hearing loss, and
5  nonexertional symptoms associated with plaintiff's diabetes, hypertension and high cholesterol.

6  In rejecting a claimant's subjective complaints, the administrative law judge "must
7  provide specific, cogent reasons for the disbelief. Without affirmative evidence showing that the
8  claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must
9  be clear and convincing." *Morgan v. Apfel*, 169 F. 3d 595, 599 (9th Cir. 1999). The ALJ's
10 reasons for rejecting plaintiff's subjective complaints were as follows (AR 16):

> Despite his complaints of pain, the claimant testified that he walks 1 mile in both the morning and afternoon for exercise and helps around the house. The claimant testified that he left his other jobs because he was laid off in one instance and because of his lack of skills in English and not because of a basi[c] inability to do the work. It is certainly within his power to learn English which would improve his employability. Moreover, the record was kept open for the claimant's representative to provide treatment records [Northgate Point]; however, no records were forthcoming.

16 Although the ALJ properly relied on plaintiff's treatment records and the findings of Dr.
17 Turkot that plaintiff's complications associated with diabetes and hypertension may be treatable
18 with better compliance, AR 14, 17, *see, e.g.*, 20 C.F.R. §§ 404.1530, 416.930 (claimant cannot
19 qualify for benefits unless he is following prescribed treatment), the ALJ's additional reasons for
20 discrediting plaintiff are neither clear nor convincing. As the ALJ acknowledged at the hearing,
21 plaintiff's walking may also support a finding that he is doing his best to follow his doctors'
22 directions. Moreover, no weight can be attached to plaintiff's failure to learn English; it is not an
23 accepted basis for discrediting his testimony. Nor can any weight be attached to the failure of
24 plaintiff's representative to provide the Northgate Point treatment records, as has already been
25 addressed. Finally, the fact that plaintiff was laid off from previous employment, rather than
26 quit, is not probative as to his current physical and mental status, given the passage of time since

11

plaintiff's last employment (2004).

As the ALJ repeatedly noted throughout his decision, this case presents a marked absence of adequate information upon which to make a decision: "Diagnostic testing has not been performed as to the claimant's right upper and lower extremity and low back." AR 16. "[I]maging studies have not been performed on the claimant's right shoulder, right leg, right ankle or low back." AR 17. "[T]he record is largely devoid of medical opinion as to functionality with no residual analysis by treating physicians." AR 17.

Apparently in recognition of this absence of evidence, the ALJ did not accept the conclusions of the Dr. Turkot and the State Agency consultants that plaintiff can perform the full range of medium work. Rather, the ALJ credited plaintiff's complaints sufficiently to find that "substantial evidence of record . . . confirms that the claimant continues to have problems with control of diabetes and hypertension and experiences pain primarily in his right upper and lower extremity and low back," thus supporting a finding that plaintiff can perform light, rather than medium, work. AR 17. This implicit concession underscores the necessity of further and fully developing plaintiff's medical record be before concluding whether plaintiff can perform gainful activity.

V. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment, Dckt. No. 19, is granted;

2. The Commissioner's cross-motion for summary judgment, Dckt. No. 20, is denied;

3. This case is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. 405(g), for further proceedings consistent with this order; and,

4. The Clerk is directed to enter judgment in favor of plaintiff.

DATED: March 19, 2009.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE